IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-558-FL

| | | |
|---|---|---|
| CHARLES A. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JEFFREY CANADY, and MR. DUNN, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss, construed as a motion for summary judgment. (DE 130). Pursuant to the court's October 15, 2013, order, plaintiff filed a response in opposition to the motion for summary judgment. Plaintiff also filed a motion for service of declarations, and an affidavit regarding the same, which the court construes as a motion for discovery. (DE 142). In this posture, the issues raised are ripe for ruling.

STATEMENT OF THE CASE

In prior orders, the court has set forth background of the case, and the court reincorporates highlights of that background pertinent to the court's ruling. On December 8, 2010, plaintiff filed suit against Jeffrey Canady, Mr. Dunn, and Adren L. Harris. The court construed plaintiff's claims as arising under 42 U.S.C. § 1983. Upon frivolity review pursuant to 28 U.S.C. § 1915A, the court dismissed plaintiff's fifth amendment claim and dismissed defendant Adren Harris from this action. The court allowed to proceed plaintiff's claims against Jeffrey Canady and Mr. Dunn (collectively, "defendants") for unreasonable search and seizure and excessive force. On June 21, 2011, defendants filed motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure

to state a claim. In the alternative, defendants requested a stay pending completion of a related state criminal proceeding. On October 18, 2011, the court stayed discovery pending adjudication of defendants' motion to dismiss. The court decided the motion in the alternative, granting the request for stay pursuant to Younger v. Harris, 401 U.S. 37 (1971) and its progeny, in order entered October 28, 2011, where prosecution of plaintiff in North Carolina state court was ongoing.

During the course of the proceedings in this case, after the filing of the initial complaint, plaintiff filed voluminous additional documents with the court, which amplify and supplement the allegations of the initial complaint. These include plaintiff's sworn handwritten assertions regarding the facts of the case (e.g. DE 45), as well as copies of state court criminal case documents. (e.g., DE 79-2, 121-122, 126, 135, 143). In addition, the parties filed regular status reports of the state court action, as directed, which also include state court criminal case documents. (e.g., DE 110-113, 123).

The most recent status report and state court documents demonstrated that the indictments against plaintiff in 09CRS004475 and 11CRS00644, arising out of law enforcement activities underlying plaintiff's claims in this case, were dismissed as part of a plea agreement in an unrelated criminal matter, case number 09CRS54113. In particular, plaintiff entered a plea of guilty to selling cocaine and possession of cocaine, and judgment was entered sentencing plaintiff to term of confinement with the North Carolina Department of Corrections. (DE 122, 123-3, 123-4). As part of his plea, all other charges currently pending against plaintiff, including but not limited to charges in 09CRS004475 and 11CRS00644, were dismissed. (Id.).

On July 16, 2013, in light of the guilty plea, which brought resolution to the state proceedings underlying petitioner's constitutional claims in this case, the court directed plaintiff to show cause why this action should not be dismissed as moot. Plaintiff responded informally, in letter dated July 23, 2013, inquiring of the case manager the status of any action by the court on

defendants' motion to dismiss. Formal response was made in filing entered July 26, 2013, offering argument why the case should not now be dismissed, with attached exhibits, and a supplemental response was filed July 30, 2013, with direction that plaintiff file nothing more without leave of the court. Defendants were directed to file a response.

On August 13, 2013, defendants filed their response asserting two alternative grounds for dismissal. First, consistent with the court's suggestion in its July 16, 2013, show cause order, defendants argued that both of plaintiff's claims are rendered moot by the guilty plea and should be dismissed under abstention principles set forth in Heck v. Humphrey, 512 U.S. 477, 481 (1994). Second, defendants argued that plaintiff's claims should be dismissed as a matter of law for failure to state a claim because defendants are entitled to qualified immunity on all of plaintiff's claims.

Because defendants sought again dismissal of the claims against them as a matter of law for failure to state a claim, in part on the basis of qualified immunity, the court construed defendant's response as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, the court directed the clerk of court to docket defendant's August 13, 2013, response as including a motion to dismiss for failure to state a claim, with memorandum incorporated therein.

Plaintiff thus was notified that defendants had filed a motion to dismiss in this case. Pursuant to Local Civil Rule 7.1(e), EDNC, the court provided plaintiff opportunity to respond to the motion in the form of a single memorandum of law. Plaintiff filed a response in opposition to motion to dismiss on September 10, 2013, and defendants filed a reply on September 19, 2013.

On October 15, 2013, noting that plaintiff had submitted documents raising facts outside of those alleged in the complaint, the court provided notice to plaintiff that defendant's motion to dismiss will be treated as one for summary judgment under Federal Rule of Civil Procedure 56, and

3

that the court was considering granting summary judgment for defendants on the basis of qualified immunity in light of the undisputed facts summarized in the court's order. The court declined further to address defendant's argument under Heck. The court permitted plaintiff thirty days from the date of the order to submit a response in opposition to summary judgment.

Pursuant to the court's October 15, 2013, order, plaintiff filed a response in opposition to the motion for summary judgment. Plaintiff has also filed a motion for service of declarations, and an affidavit regarding the same, which the court construes as a motion for discovery.

STATEMENT OF UNDISPUTED FACTS

The following material facts are not in dispute.[1] On Friday, November 14, 2008, a confidential informant informed defendant Canady, a Johnston County sheriff's officer, that a black male with a street name of "Meth" would be traveling in a white Mitsubishi on Johnston County Line Road with a large quantity of drugs for delivery to the confidential informant. Agent Josh Christensen, of the Harnett County sheriff's office, and additional deputies with the Johnson County sheriff's office "S.A.F.E. Team," including defendant Dunn, were contacted to assist in making a traffic stop.

Agent Christensen confirmed that "Meth" was plaintiff, and that plaintiff's driver's license was suspended. Agent Christensen and a Johnson County sheriff's officer were riding together in a patrol car when they passed a white Mitsubishi driving on Johnston County Line Road, and they identified the driver as plaintiff, who was the only occupant in the vehicle.

---

[1] These facts are drawn directly from plaintiff's sworn statements and state court materials submitted by plaintiff, particularly defendants' investigative statements, incorporated into plaintiff's response in opposition to summary judgment, and attached to plaintiff's response in opposition to the motion to dismiss. (DE 45 at p. 6; DE 135-1 at pp. 23-26; DE 143 at pp. 6-9).

4

Defendant Dunn received a report that a white Mitsubishi was traveling on Johnston County Line Road, operated by plaintiff with an undisclosed amount of controlled substance inside. Defendant Dunn, who was parked on the shoulder of Johnston County Line Road, spotted a vehicle matching the target vehicle approach his location, traveling south past his patrol car on Johnston County Line Road. Defendant Dunn observed plaintiff's car slow rapidly and cross completely over the solid center line of the road. As defendant Dunn pulled out onto the road to pursue the vehicle, plaintiff immediately turned into a driveway on the right side of the road. Defendant Dunn activated his emergency lights and pulled behind plaintiff into the driveway of 1469 Johnston County Line Road, in Benson, North Carolina.

Dunn approached plaintiff's car and asked him if he had a license, and plaintiff responded that he did not. Defendant Dunn identified plaintiff, asked him to step out of the vehicle, and placed him in handcuffs. As plaintiff was exiting his vehicle, defendant Dunn observed a plastic bag in plaintiff's front pocket, containing suspected marijuana and cocaine. Deputies searched plaintiff and found crack cocaine, marijuana, and $422.00 in currency on his person. According to plaintiff's complaint, there were approximately ten Johnston County law enforcement officers present at the scene, and an unknown number of those officers had their guns drawn and pointed at plaintiff while he was handcuffed.

COURT'S DISCUSSION

A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual

dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party).  The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Summary judgment is not a vehicle for the court to weigh the evidence and determine the truth of the matter, but to determine whether a genuine issue exists for trial.  Anderson, 477 U.S. at 249.   In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment.  Anderson, 477 U.S. at 247-48.  Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on this motion.  Id. at 248-49.

B. Analysis

Defendants raise the defense of qualified immunity against plaintiff's § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly

6

established at the time of the official's alleged misconduct. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

    1. Search and Seizure

Plaintiff claims that he was wrongfully arrested and that defendants' search and seizure violated his Fourth Amendment rights. "To establish an unreasonable seizure under the Fourth Amendment, [a plaintiff] needs to show that the officers decided to arrest [him] . . . without probable cause." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed." Id. Likewise, "[p]robable cause to search [exists] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996). In addition, "[a] traffic stop is permissible if the officer has probable cause or a reasonable suspicion to believe that a traffic violation has occurred." United States v. Harcum, 184 F. App'x 317, 318 (4thCir. 2006).

As demonstrated by the undisputed facts submitted by plaintiff, defendant officers had probable cause to stop, arrest, and search plaintiff. Deputies informed the arresting officer, defendant Dunn, that plaintiff was driving a white Mitsubishi on Johnston County Line Road with an undisclosed amount of controlled substances inside. (DE 126-3 at p. 6). Defendant Dunn confirmed that plaintiff had a suspended drivers license. (Id.). Defendant Dunn spotted a white Mitsubishi on Johnston County Line Road slow rapidly and cross the center line. (Id.). Based on these facts, defendant Dunn had sufficient probable cause to initiate a vehicle stop of the vehicle and an arrest of plaintiff. Moreover, upon observing a plastic bag upon plaintiff's person suspected of

7

containing marijuana and cocaine, (id.), defendant Dunn had further information supporting probable cause for both the arrest of plaintiff and search of his person and vehicle. Accordingly, plaintiff has not demonstrated a violation of a constitutional right in his arrest and the search following his arrest.

Plaintiff argues, nonetheless, that his arrest was unlawful because defendants, as Johnston County Sheriff's officers, lacked jurisdiction to arrest him in Harnett County.[2] Neither the Fourth Circuit nor the Supreme Court has addressed whether it is a violation of a clearly established constitutional right for an arrest to take place outside of the territorial jurisdiction of an arresting officer. One court in this circuit has observed, however, that "[t]he majority view, including decisions in the Courts of Appeal for the Seventh and Eighth Circuits, and more recent decisions in the Tenth Circuit, firmly rejects the notion that a lack of state statutory authority to make an arrest constitutes a per se violation of the Fourth Amendment." United States v. Atwell, 470 F. Supp. 2d 554, 573 (D. Md. 2007) (collecting cases); see also Virginia v. Moore, 553 U.S. 164, 171-72 (2008) "[W]hether or not a search is reasonable within the meaning of the Fourth Amendment has never depend[ed] on the law of the particular State in which the search occurs.") (internal citations omitted).

On this basis alone, absent more a more definitive holding by the Supreme Court and Fourth Circuit Court of Appeals, defendants in this case did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818;

---

[2] This argument is premised on the fact that the driveway where he was arrested, at 1469 Johnston County Line Road, in Benson, North Carolina, is in Harnett County, not Johnston County, North Carolina, which fact is undisputed. The court takes judicial notice that this address is just within the boundary between Harnett County and Johnson County.

8

see Henry v. Purnell, 652 F.3d 524, 534 (4th Cir. 2011) ("An official will not be held liable unless '[t]he contours of the right [he is alleged to have violated were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'") (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

In any event, further factors support a determination that the arrest and search in this case was reasonable, despite the location in Harnett County. In Atwell, the court identified multiple factors courts have used, under varying circumstances, to determine whether an extra-jurisdictional arrest is a violation of the Fourth Amendment:

> Primary to the determination of the reasonableness of any warrantless arrest is, of course, the existence of probable cause for the arrest. (factor one). . . . Other relevant factors in the reasonableness analysis under the Fourth Amendment include the degree of the officer's compliance with state law (factor 2); the fact that officers were acting between political subdivisions of the same state (factor 3); the presence of exigent circumstances or the lack thereof (factor 4); the location where the offense or crime originated (factor 5); an officer's knowledge that he was without authority to make an arrest (factor 6); "[an officer's] blatant disregard of state law and the chain of command[;]" (factor 7); the motivation behind the state statute limiting territorial jurisdiction and whether it was designed to protect against unreasonable police behavior (factor 8); and the state's interest in making a particular type of arrest (factor 9).

Atwell, 470 F. Supp. 2d at 574-75 (footnotes and citations omitted).

As noted above, undisputed facts establish that defendants had probable cause to arrest and search plaintiff, on the basis of the reported drug trafficking activity, the suspended drivers license, and the manner in which plaintiff was driving. The reasonableness of the stop is further supported by the circumstances presented to officers in this case: plaintiff was traveling in a vehicle on a road at or near the border between two counties, political subdivisions of the same state. Officers from both counties were involved in the investigation and pursuit, particularly agent Josh Christensen of Harnett County, who confirmed the identity of "Meth" as plaintiff, and advised that plaintiff did not

9

have a valid divers license. (DE 126-3 at p. 3). An officer in defendants' position reasonably would recognize a public safety interest in effectuating a traffic stop and arrest of such an individual beyond the county limits of the officer's jurisdiction in order to thwart an unfolding drug transaction.

Further, with respect to state law, although the North Carolina Supreme Court has not directly addressed the issue, the North Carolina Court of Appeals has held that "according to well-established federal constitutional law and our own controlling precedent, a determination that [a defendant officer] lacked the statutory authority to stop Defendant's vehicle does not have any bearing upon whether the stopping of Defendant's vehicle violated the Fourth Amendment." State v. Verkerk, 747 S.E.2d 658, 669 (N.C. Ct. App. 2013); see State v. Gwyn, 103 N.C.App. 369, 371, 406 S.E.2d 145, 146 (1991) ("[T]he defendant's illegal arrest beyond the policeman's territorial jurisdiction did not render the seizure and search unreasonable since the patrolman had probable cause."); State v. Afflerback, 46 N.C. App. 344, 347, 264 S.E.2d 784, 785 (1980) ("[N]otwithstanding a technical violation of a police officer's jurisdictional statute, the officer had probable cause to arrest the defendant and evidence seized incident thereto was admissible.").

In sum, a reasonable officer in defendants' position would not have reason to believe that their conduct in arresting plaintiff violated "clearly established statutory or constitutional rights" of plaintiff. Harlow, 457 U.S. at 818. Accordingly, qualified immunity shields defendants from liability on plaintiff's search and seizure claim, and summary judgment therefore must be granted in favor of defendants.

2. Excessive Force

Plaintiff argues that defendants violated his constitutional rights by applying excessive force upon his arrest. In particular, plaintiff alleges that defendants applied excessive force by

10

handcuffing him and then pointing their drawn guns on him. According to plaintiff's sworn complaint, there were approximately ten Johnston County law enforcement officers present at the scene, and an unknown number of those officers had their guns drawn and pointed at plaintiff while he was handcuffed. (DE 1 at 5). As set forth below, accepting plaintiff's factual contentions as true, plaintiff fails to establish a violation of a clearly established constitutional right.

A "seizure effectuated by excessive force contravenes [the] Fourth Amendment." Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013) (citing Waterman v. Batton, 393 F.3d 471, 476 (4th Cir.2005)). "Whether an officer has used excessive force is judged by a standard of objective reasonableness." Cooper, 735 F.3d at 158 (quoting Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir.2002)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal citations omitted). "[T]he question is whether the totality of the circumstances justifies a particular sort of seizure." Id. (citation omitted).

Supreme Court jurisprudence "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. (citation omitted). In addition, it is well established that "[i]nvestigating officers may take such steps as are reasonably necessary to maintain the status quo and to protect their safety during an investigative stop." United States v. Taylor, 857 F.2d 210, 213 (4th Cir.1988) (citing United States v. Hensley, 469 U.S. 221, 235 (1985)). Thus, although "approaching a suspect with drawn weapons [is an] extraordinary measure[ ], such [a] police procedure[ ] [has] been justified in this circuit as a reasonable means of neutralizing potential danger

11

to police and innocent bystanders." Taylor, 857 F.2d at 214. Drawn weapons are "a justified safety precaution." Id. Applying these principles, in Taft v. Vines, 83 F.3d 681, 684 (4th Cir. 1996) (en banc), the court held that police officers were entitled to qualified immunity on excessive force claims, where officers directed passengers including minor children to exit a vehicle, with their weapons trained at close range on each of them.

In this case, as in Taft, although officers allegedly had their weapons pointed at plaintiff, such practice was a justified safety precaution, in light of the nature of the charges. Deputies informed defendant Dunn that plaintiff was en route to a drug transaction. Further, plaintiff was arrested in a driveway to a residence. From these facts, officers reasonably could infer that plaintiff posed potential danger to police and innocent bystanders, requiring drawn weapons. See Michigan v. Summers, 452 U.S. 692, 702 (1981) (recognizing that "execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence").

Plaintiff suggests that the force employed in this case was unreasonable because he was handcuffed behind his back, and thus he posed no threat to safety of others. The Fourth Circuit has recognized that if a "subject is unarmed and secured," the "use of any unnecessary, gratuitous, and disproportionate force, whether arising from a gun, a baton, a taser, or other weapon, precludes an officer from receiving qualified immunity." Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 735 (4th Cir. 2013). It is thus significant to the excessive force analysis that plaintiff was unarmed and secured in this case. But, notably absent here is the application of "unnecessary, gratuitous, and disproportionate force," in the manner alleged in those case where a qualified immunity defense was denied. Id.

For example, in Meyers, the court observed "[h]ere, [plaintiff] was unarmed and effectively was secured with several officers sitting on his back. In such circumstances, the seven additional taser shocks administered by [the defendant officer] were clearly unnecessary, gratuitous, and disproportionate." Id. Similarly, in Jones v. Buchanan, 325 F.3d 520, 528 (4th Cir. 2003), the court observed that it was "undisputed that [plaintiff] was neither armed nor suspected of being armed" when the defendant officer "knocked [plaintiff] to the floor and jumped on him, breaking his nose, lacerating his face, and bruising his ribs." Several additional cases are instructive, by comparison, in outlining the contours of a clearly established excessive force violation. See Orem v. Rephann, 523 F.3d 442, 449 (4th Cir.2008) (concluding that use of a taser to "punish or intimidate" a pretrial detainee is not objectively reasonable and is contrary to clearly established law); Park v. Shiflett, 250 F.3d 843, 852-53 (4th Cir.2001) (concluding that an officer's use of "pepper spray" to subdue an unarmed subject was excessive when the subject was not a threat to the officer or the public, and that the officer was not entitled to qualified immunity); Kane v. Hargis, 987 F.2d 1005, 1008 (4th Cir.1993) (per curiam) (upholding denial of summary judgment when officer cracked three teeth, cut plaintiff's nose, and inflicted facial bruises).

Plaintiff does not allege any serious, let alone grievous, injuries as a result of the force applied. The lack of alleged severe injuries thus further weighs in support of the conclusion that defendants are entitled to qualified immunity in this case. See Saucier v. Katz, 533 U.S. 194, 209 (2001) ("Our conclusion is confirmed by the uncontested fact that the force was not so excessive that respondent suffered hurt or injury."); Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002) (finding "assertion that [defendant officer] handcuffed [plaintiff], causing her wrists to swell, dragged her to the car and then pulled her into his cruiser" insufficient to overcome qualified immunity, noting

13

"[s]he alleges no injury of any magnitude"); Mensh v. Dyer, 956 F.2d 36, 40 (4th Cir.1991) ("It is undisputed that [plaintiff] suffered no physical injury as a result of the incident.").

In sum, under the facts alleged, plaintiff has not demonstrated a violation of a clearly established constitutional right. Accordingly, defendants are entitled to summary judgment on the basis of qualified immunity.

3. Motion for Discovery

Plaintiff seeks to have "declarations" served on, and responses received from, a number of individuals. (DE 142, 144). The court construes this motion, and an affidavit regarding the same, to be a motion for discovery, pursuant to Federal Rule of Civil Procedure 56(d).

Rule 56(d) provides that "[i]f a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). To justify an additional time for discovery under this rule, the facts identified in a Rule 56 affidavit must be "essential to [the] opposition" of the motion. Id. Accordingly, a non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir.1995). Further, because qualified immunity provides "a test that focuses on the objective legal reasonableness of an official's acts," Harlow, 457 U.S. at 819, discovery bearing on an officer's subjective intent or motive should not be allowed until the qualified immunity issue is resolved. See Crawford-El v. Britton, 523 U.S. 574, 600 (1998).

Plaintiff has not demonstrated a need for the additional discovery requested. In his affidavit, plaintiff describes his desire to obtain legal documents from several attorneys, the assistant district attorney, the magistrate securing a bond, a state court clerk, and other court employees, all involved in his state court criminal proceedings. (DE 144). With respect to the type of information sought, plaintiff repeats his argument that defendants lacked jurisdiction to arrest him because he was arrested in Harnett County, and for each individual subject to proposed discovery, plaintiff seeks communications and documents transmitted between attorneys and court personnel regarding the issue of jurisdiction for arrest. (See id.). The court, however, has already accepted in its analysis plaintiff's assertion that defendants lacked jurisdiction to arrest plaintiff in Harnett County, and the court has determined nevertheless that defendants are subject to qualified immunity. Plaintiff thus has not demonstrated how additional discovery regarding jurisdiction of the arresting officers "would by itself creat[e] a genuine issue of material fact sufficient to defeat summary judgment." Strag, 55 F.3d at 954.

Plaintiff also suggests in his motion for discovery that he would like to serve proposed declarations to the same persons identified in his affidavit containing pre-drafted statements of facts and documents regarding the events on the date of his arrest and in subsequent court proceedings. (DE 142). For example, he includes a "statement of complaint" that he suggests would be attached to all discovery requests, suggesting that each recipient affirm or deny the contents therein. (DE 142-1). With each proposed declaration, he also attaches numerous state court documents, such as pleadings, procedural forms, exhibits, orders, and related documents, which previously have been included with his filings in this court. (DE 142-1 through 10). The court has, as set forth above, accepted plaintiff's account of events, which incorporates verbatim the defendants' investigative

15

statements included with these proposed discovery requests.  Accordingly, plaintiff has failed to demonstrate how the additional discovery requested from the individuals noted "would by itself creat[e] a genuine issue of material fact sufficient to defeat summary judgment." Strag, 55 F.3d at 954.

Finally, plaintiff suggests in opposition to defendants' motion to dismiss that he would like to obtain additional discovery in order to show that arresting officers had a "very serious evil intent to cause harm" in determining the amount of force to use upon arrest.  (DE 135 at p.7).  As noted above, however, qualified immunity provides "a test that focuses on the objective legal reasonableness of an official's acts." Harlow, 457 U.S. at 819.  And, whether an officer has used excessive force is not judged by the officer's intent or motive, but rather "by a standard of objective reasonableness." Cooper, 735 F.3d at 158.  Accordingly, the court properly may preclude plaintiff from discovery into the defendants' subjective state of mind.

In sum, where plaintiff has not shown that any proposed discovery would create a genuine issue of material fact sufficient to defeat summary judgment, plaintiff's motion for discovery will be denied.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss, construed as a motion for summary judgment, (DE 130), is GRANTED.  Defendants are entitled to judgment as a matter of law on the basis of qualified immunity with respect to all claims raised by plaintiff.  In addition, plaintiff's motion for discovery (DE 142) is DENIED.   The clerk is directed to close this case.

SO ORDERED, this the 7th day of January, 2014.

*/s/ Louise W. Flanagan*

LOUISE W. FLANAGAN
United States District Judge

16
Case 5:10-cv-00558-FL   Document 146   Filed 01/07/14   Page 16 of 16